## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

## AUSTIN DIVISION

| | | |
|---|---|---|
| **STEVEN RANGEL ELIAS,** | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **A-06-CA-534-LY** |
| | § | |
| **NATHANIEL QUARTERMAN, Director,** | § | |
| **Texas Dept. of** | § | |
| **Criminal Justice-Correctional** | § | |
| **Institutions Division,** | § | |
| **Respondent.** | § | |

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

To:     The Honorable Lee Yeakel, United States District Judge

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Supplemental Petition for Habeas Corpus under 28 U.S.C. § 2254 (Document 27) and Respondent's Supplemental Answer (Document 34). Petitioner, proceeding pro se, has paid the filing fee for his application. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

**A.    Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to two judgments and sentences of the 331st Judicial District Court of Travis County, Texas, in cause numbers 3020966 and 3020932, styled <u>The State of Texas v. Steve Elias</u>.  Petitioner was charged with arson of a habitation in cause number 3020966 and arson of a vehicle in cause number 3020932.  For purposes of enhancing punishment, the indictment contained three prior felony convictions.  A jury found Petitioner guilty as alleged in the indictments.  After Petitioner pleaded "true" to the enhancement paragraphs on January 16, 2003, the trial court assessed punishment at 50 years imprisonment in each cause.

On March 25, 2004, the Third Court of Appeals affirmed the judgments of the trial court. <u>Elias v. State</u>, Nos. 03-03-00132-CR, 03-03-00133-CR, 2004 WL 578424 (Tex. App. – Austin 2004, pet. ref'd).  Petitioner's petitions for discretionary review were refused by the Texas Court of Criminal Appeals on August 31, 2004.  <u>Elias v. State</u>, PDR Nos. 0635-04, 0636-04.

Petitioner filed two applications for state writ of habeas corpus on June 30, 2004.  Both were dismissed on October 20, 2004, because his direct appeal was still pending.  <u>Ex parte Elias</u>, Appl. Nos. 60,284-01 and -02.  On January 11, 2005, Petitioner filed his third and fourth applications for state writ challenging his convictions.  <u>Ex parte Elias</u>, Appl. Nos. 60,284-03 and -04.  Both state writs were ultimately denied without written order on the findings of the trial court without a hearing on February 1, 2006.

Petitioner mailed his federal application for habeas corpus relief to the Court on July 10, 2006.  The Court subsequently granted Petitioner's motion for appointment of counsel.  Counsel

filed a supplemental petition on April 27, 2007.  Respondent filed a supplemental answer on August 6, 2007.

**B.      Factual Background**

The facts of Petitioner's case are best summarized in the State's Brief on direct appeal. Those facts are repeated below.

Petitioner left a note for his estranged wife, JoAnn Ramirez, with a family member about two weeks prior to the instant offense.  Ramirez believed Petitioner's purpose in leaving this note was to notify her that he had been released from jail and would be looking for her.  4 SF 15-19.  In response, Ramirez called Petitioner and confronted him about the note.  She told Petitioner to leave her alone.  4 SF 20.  On May 2, 2002, Petitioner called Ramirez multiple times.  He threatened to kill her and to burn her cars (she had three cars).  4 SF 21-22.  On May 4, 2002, Ramirez saw Petitioner at the Diamond Shamrock convenience store across the street from the duplex unit where she lived with her children and her boyfriend.  This frightened her because, up until this moment, Ramirez thought Petitioner did not know the location of her current address.  After seeing Petitioner, she immediately called the police.  4 SF 22-24.  An Austin police officer, Aric Bilson, came out and interviewed Petitioner.  Officer Bilson could not arrest Petitioner because there were no warrants out for his arrest and Petitioner did not harass Ramirez in his presence.  4 SF 154-55, 162-63, 179-86.

Ramirez returned home, packed her clothes, and moved her family to a room at a nearby hotel.  She told her next-door neighbor (they shared the duplex), Martha Garcia, that if anyone came looking for her, not to tell the person where she had gone. Her fourteen-year-old son, Felipe, did not come with her because he was spending the night with a friend.  4 SF 29, 156.  That night, she slept at the motel with her two younger children.  4 SF 30-31.

3

At about 5:00 a.m., a man form the neighborhood knocked on Garcia's door and told her that Ramirez's car was burning. He said he saw someone throw something through the window of the car and then set the car on fire. He and some other men had tried to put out the fire because they were afraid the car would explode. 4 SF 156-58. When Ramirez returned to her home in the morning, she found that her 1985 Cadillac that had been parked in her yard had been burned. 4 SF 30-31. The word "bitch" had been scratched into the hood of the car. 4 SF 70. The front window had been broken in with a piece of toilet. The vehicle had been set on fire by igniting combustible materials inside the car. 4 SF 111-12.

Ramirez called the Austin Fire Department. Fire fighters had already come out to the home earlier that morning to put out the fire and document the scene (the original "911" call reporting the fire was placed at 5:21 a.m.) Ramirez arranged for arson investigators to come to her home to speak with her about the case. Petitioner called her house as she waited for the arson investigators to arrive. He denied starting the fire. Ramirez looked at her caller identification record and saw that Petitioner had called her house twice at 5:53 a.m. and 5:59 a.m. 4 SF 32-34, 78.

After the arson investigators arrived at her house and began interviewing Ramirez about the incident, Petitioner called her again. At the suggestion of the investigators, Ramirez hung up and called Petitioner back so that they could record the conversation. 4 SF 34-35. During this recorded conversation and a second recorded conversation, Petitioner threatened to kill Ramirez and told her he knew where she was living. 4 SF 35, 78-83.

Ramirez returned to the motel room and spent the night there with her family. Felipe returned to the house that evening around 6:00 p.m. to "hang around there and talk on the phone." He left again at about 9:30 or 10:00 p.m. through a rear window that Ramirez usually left unlocked

for him because he kept losing his keys.  As he was walking around to the front of the house, he encountered Petitioner in a neighbor's yard.  Petitioner repeatedly asked him where his mother (Ramirez) was.  Felipe told him "I don't know," because his mom had told him not to tell Petitioner where she was.  Petitioner asked Felipe how he had gotten into the house.  Felipe, who was very frightened of Petitioner, admitted that he had used the unlocked back window.  Petitioner walked over and looked at Ramirez's car.  He gave Felipe a few dollars.  4 SF 38-42, 121-45, 160-62.

After talking to Petitioner, Felipe walked over to the Diamond Shamrock convenience store. The video camera at the store recorded Felipe buying a fountain drink at 9:50 p.m. (actually about 9:40 p.m. because the VCR clock was nine or ten minutes fast).  At 10:04 p.m. (approximately 9:54 p.m.), that same video camera recorded Petitioner purchasing matches at the Diamond Shamrock store.  4 SF 146, 188-89.

Around 9:45 p.m., Garcia and her other children went to bed.  Shortly thereafter, she heard glass breaking on Ramirez's side of the duplex.  She looked out and saw that a fire had started in Ramirez's unit.  Garcia rushed her children outside and called 911.  4 SF 161-62.

The Fire Department responded to the emergency call at 10:04 p.m.  4 SF 8-9.  Arson Investigator Michael Crabill determined that the rear window of the duplex had been shattered by the fire.  He performed an investigation and ruled out all natural causes of the fire.  He found that the fire had been started by intentionally igniting combustible materials on a love seat in Ramirez's bedroom with matches or a lighter.  This love seat was located near the window Felipe had used to climb into and out of the home.  5 SF 14-28, 35, 53.

About four minutes after Petitioner purchased the matches on the Diamond Shamrock videotape, sirens were audible getting louder and louder.  Shortly thereafter, the tape showed that

Petitioner came back into the store and called a cab.  4 SF 36-37; 5 SF 198.  Crabill testified that this was adequate time for Petitioner to start the fire and for the fire to progress.  H also said that arsonists frequently stay near the burning structure until they are satisfied that the fire has progressed to a point where someone has noticed it and called the fire department.  5 SF 41-47.

Ramirez's sister called her the next day and told her that her house had been burned.  4 SF 35-36.  When Ramirez came home on May 5, 2002, she found someone had set the stove and range to the "broil" and "on" positions respectively.  There was a sock wedged into the range and a piece of wood in the oven.  She said that the lighter found by firemen in the duplex did not belong to her or her family.  Ramirez said the end result of this fire was that her home was severely damaged and she and her children were forced to find another place to live.  4 SF 38-42.

On May 8, 2002, Austin police officers went to execute an arrest warrant for Petitioner.  As the officers approached the house in Pflugerville where Petitioner was staying, Petitioner fled.  He was apprehended in the backyard of the house while trying to scale the fence.  5 SF 125-27.

## C.    Petitioner's Grounds for Relief

Petitioner argues he was denied effective assistance of counsel when his trial attorney failed to:  (a) exclude extraneous bad acts during the guilt/innocence phase of trial; (b) request a limiting instruction or a reasonable doubt instruction regarding the extraneous offenses; (c) request a competency hearing before proceeding to trial; and (d) adequately investigate Petitioner's mental status and use it to his advantage at trial.

**D.      Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application.  A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

<u>DISCUSSION AND ANALYSIS</u>

**A.      The Antiterrorism and Effective Death Penalty Act of 1996**

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"],[1] which radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254.  Under the AEDPA's new standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Dowthitt v. Johnson</u>, 230 F.3d 733, 740 (5th Cir. 2000) (quoting <u>(Terry) Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 1523 (2000)).   The inquiry into whether the decision was based on an "unreasonable

---

[1] Pub.L. No. 104-132, 110 Stat. 1214 (1996).

determination of the facts" constrains a federal court in its habeas review due to the deference it must

accord the state court.  See id.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on
> a question of law or if the state court decides a case differently than ... [the Supreme
> Court] has on a set of materially indistinguishable facts.  Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if the state court
> identifies the correct governing legal principle from ... [the Supreme Court's]
> decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  See 28 U.S.C.

§ 2254(e)(1).  While we presume such determinations to be correct, the petitioner can rebut this

presumption by clear and convincing evidence.  See id.  Absent an unreasonable determination in

light of the record, we will give deference to the state court's fact findings.  See id. § 2254(d)(2).

With these principles in mind, this Court must now turn to the issues raised by the pleadings in this

cause.

## B.    Ineffective Assistance of Counsel

Petitioner argues trial counsel allowed Petitioner to be tried for a previous misdemeanor case,

criminal mischief, as well as other previous offenses and bad acts, in addition to the instant cases,

and then did not request a limiting instruction of any kind or a reasonable doubt instruction, which

allowed the jury to convict Petitioner for committing the previous offenses and bad acts.

Specifically, Petitioner asserts counsel failed to object to Ramirez's testimony when she stated

Petitioner had been in jail "because he had burned my sister's car . . . ."  4 SF 16.  Defense counsel

subsequently questioned Ramirez about her previous allegation that Petitioner had damaged her

sister's car in 2000.  4 SF 55.  The State followed up with additional questions about the sister's car.

4 SF 57.  Arson investigator Frank Alvarez also testified about the 2000 incident without objection.

4 SF 72, 76, 84, 95.  Petitioner further states evidence regarding a 1995 episode also came into

evidence without objection.  Petitioner contends counsel was ineffective for failing to object to these

extraneous offenses.  Alternatively, Petitioner contends counsel was ineffective in failing to require

the State to prove the extraneous conduct beyond a reasonable doubt.  Additionally, Petitioner argues

there is no doubt he was prejudiced by trial counsel's performance, in that Petitioner was tried as a

criminal generally, and the jury was allowed to convict him as a criminal generally. Petitioner

concludes the state court's resolution of this claim is contrary to, or an unreasonable application of,

clearly established federal law.

Petitioner also argues counsel was ineffective in that he proceeded to trial without requesting

a competency examination.  In support of his state writ applications, Petitioner filed information

demonstrating that, when he was released to parole in 1994, he was placed on the Mental Health

Mental Retardation caseload.  Ex parte Elias, Appl. No. 60,284-03 at 40, 42.  The evidence further

showed, as a child, he was enrolled in special education classes.  Id. at 45.  Petitioner also allegedly

reads and writes at the third-grade level and spells at the first-grade level.  Id.  According to

Petitioner, he was found to have mild mental retardation and borderline intellectual functioning.  Id.

at 45, 47.

Alternatively, Petitioner argues that trial counsel did not investigate Petitioner's mental

health history and use it in a way that could have been helpful at trial.  Specifically, Petitioner asserts

evidence of Petitioner's diminished capacity could have been used to demonstrate that Petitioner was

not capable of forming the mens rea necessary to commit the instant offenses.  Petitioner further

asserts counsel could have introduced evidence of Petitioner's mental deficit at punishment as mitigating evidence.

To establish an ineffective assistance of counsel claim, Petitioner must meet the two-prong test under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  He must demonstrate both that: (1) his counsel's performance was deficient, including "errors so serious that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment"; and (2) his counsel's "deficient performance prejudiced the defense."  Id. at 687, 104 S. Ct. at 2064; United States v. Walker, 68 F.3d 931, 933 (5th Cir. 1995).

To establish deficient performance, Petitioner must show his counsel's acts were not "reasonable in light of all the circumstances," and he must overcome the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  See United States v. Haese, 162 F.3d 359, 364 (5th Cir. 1998) (citing Strickland, 466 U.S. at 687, 104 S. Ct. at 2064); United States v. Samuels, 59 F.3d 526, 529 (5th Cir. 1995)  (strong showing required by defendant to place counsel's conduct outside wide range of reasonable professional assistance).  To demonstrate prejudice, he must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Haese, 162 F.3d at 364 (citing Pratt v. Cain, 142 F.3d 226, 232 (5th Cir. 1998)); United States v. Kinsey, 917 F.2d 181, 183 (5th Cir. 1990).

Petitioner must show more than that a different result would have been "possible."  Cockrum v. Johnson, 119 F.3d 297, 302 (5th Cir. 1997).  He must also show the prejudice rendered the proceeding "fundamentally unfair or unreliable."  Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997).  When a defendant fails to meet either requirement of the Strickland test, his ineffective

assistance of counsel claim is defeated.  See Belyeu v. Scott, 67 F.3d 535, 538 (5th Cir. 1996); United States v. Gaudet, 81 F.3d 585, 592 (5th Cir. 1993).  The Fifth Circuit "has also made clear that counsel is not required to make futile motions or objections."  Koch v. Puckett, 907 F.3d 524, 527 (5th Cir. 1990).  Likewise, counsel is not "deficient for failing to press a frivolous point."  Sones v. Hargett, 61 F.3d 410, 415 (5th Cir. 1995).

Where ineffective assistance of counsel is alleged during the punishment phase of a non-capital case, the petitioner must demonstrate that the sentence he received would have been "significantly less harsh" but for the deficient performance of his attorney.  Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993). Among the relevant factors the court must consider are: (1) the sentence imposed in the case; (2) the minimum and maximum sentence allowed by law; (3) the placement of the sentence within the allowable range; and (4) any mitigating or aggravating factors considered by the trier of fact.  Spriggs, 993 F.2d at 88-89.[2]

1.    Extraneous Offenses

Petitioner contends counsel was ineffective for failing to exclude extraneous bad acts during the guilt/innocence phase of trial and subsequently failing to request a limiting instruction or a reasonable doubt instruction.  Texas law allows evidence of extraneous offenses committed by the

---

[2] In United States v. Grammas, 376 F.3d 433 (5th Cir. 2004), the Fifth Circuit abrogated the "significantly less harsh" test for ineffective assistance of counsel claims arising under the federal sentencing guidelines.  Id. at 438. See also Glover v. United States, 531 U.S. 198, 203, 121 S. Ct. 696, 700 (2001) (holding that "any amount of actual jail time has Sixth Amendment significance"). However, the court noted an important distinction between the federal guidelines and state sentencing regimes.  Because state sentencing tends to be more discretionary than the more predictable federal system, "practically any error committed by counsel could [result] in a harsher sentence."  Grammas, 376 F.3d at 438 n. 4 (quoting Spriggs, 993 F.2d at 88). Therefore, the court limited its adoption of the "any amount of jail time" test to cases involving the federal guidelines. Id.

accused to be admitted to show a common scheme or motive, or to show intent or identity, when either or both are at issue. Tex. R. Crim. Evid. 404(b); <u>Albrecht v. State</u>, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972); <u>Hafti v. State</u>, 416 S.W.2d 824, 825 (Tex. Crim. App. 1967).  Evidence may be admitted "on the widely recognized principle that similar but disconnected acts may be shown to establish intent, design, or system"; and the fourteenth amendment leaves a state court free to adopt such a rule of relevance. <u>Lisenba v. California</u>, 314 U.S. 219, 227-228, 62 S.Ct. 280, 285-286, 86 L.Ed. 166 (1941).

As explained by Respondent, the complained of extraneous offenses included evidence that Petitioner got out of jail before the instant offense was committed and he committed previous vengeful arsons against women under circumstances very similar to the instant case.  These acts were relevant and probative to showing that Petitioner had the opportunity and the motive to commit the charged offenses, and had a method of operation by which he sets fires to women's cars and homes when he was angry or jealous.  In addition, Petitioner had made an issue of identity when he suggested that other people were responsible for the fires.  The disputed evidence was relevant to rebutting the mistaken identity argument.  Moreover, given the overwhelming evidence of Petitioner's guilt, any prejudicial effect of the extraneous offense evidence or the failure to request a limiting instruction or a reasonable doubt instruction was not likely a substantial or critical factor in the jury's determination. <u>Thomas v. Lynaugh</u>, 812 F.2d 225, 230-31 (5th Cir. 1987).  Accordingly, the state court's denial of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law.

2.    Competency Issue

Petitioner argues counsel was ineffective in that he proceeded to trial without requesting a competency examination.  Petitioner's argument hinges on his contention that he was not competent to stand trial.  There is a two-part standard for ascertaining competence to stand trial: (1) whether the defendant has the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and (2) "whether he has a rational as well as factual understanding of the proceedings against him."  Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 789 (1960). An attorney undoubtedly renders ineffective assistance when "he or she fail[s] to inquire into a defendant's competency and fail[s] to request a competency hearing, despite indicia of incompetence that would provide reasonable counsel 'reason to doubt' the defendant's ability to understand the proceedings, communicate with counsel, and assist in his own defense."  Jermyn v. Horn, 266 F.3d 257, 300 (3rd Cir. 2001).

Petitioner raised this issue in his first state habeas application.  In responding to Petitioner's state application for writ of habeas corpus, trial counsel Malcolm S. Nettles ("Nettles") provided an affidavit in which he stated in pertinent part:

> During my many meetings with Mr. Elias I had questioned him extensively about his background and involvement in the criminal justice system.  I was aware that he was developmentally challenged and often unable to effectively communicate ideas.  He was, however aware of the charges against him and the gravity of the situation.  He had insisted that the Sate could not prove the allegations.

Ex parte Elias, Appl. No. 60,284-03 at 17; -04 at 53.  Nettles also pointed out Petitioner had three prior convictions and trips to the penitentiary.  Id. at 16; -04 at 52.

The state habeas court found counsel's affidavit to be credible and trustworthy.  Id. at 64; -04 at 60.  It further found that counsel fully investigated Petitioner's case.  Id.  The trial court concluded

13

that Petitioner did not demonstrate that his attorney's representations deviated from the range of competence demanded of attorneys in criminal cases.  Id. at 65; -04 at 61.

As Petitioner recognizes, the state habeas court's findings must be granted deference unless they were based on an unreasonable determination of the facts in light of the evidence presented. Hill, 210 F.3d at 485.  Petitioner notes the trial court made no explicit finding that Petitioner was or was not competent to stand trial.  Petitioner argues counsel is not qualified to make the determination that his own client is competent to stand trial.

Although Petitioner presented the state court with some evidence indicating he suffered from mild retardation, he did not present any evidence, expert or otherwise, specifically addressing whether these conditions rendered him incompetent to stand trial.  In contrast, the state court was presented with the affidavit of Petitioner's counsel setting forth the steps he took in evaluating and reviewing Petitioner's competency to stand trial.  By concluding that Petitioner had not demonstrated that his attorney deviated from the range of competence demanded of attorneys in criminal cases, the state court apparently concluded counsel's actions were sufficient to meet the Strickland standard.  Petitioner has failed to show this conclusion was contrary to governing law or otherwise unreasonable.

Alternatively, Petitioner argues that trial counsel did not investigate Petitioner's mental health history and use it in a way that could have been helpful at trial either to show Petitioner was not capable of forming the mens rea necessary to commit the instant offenses or as mitigating evidence.  On state habeas review counsel averred that he believed the evidence which would have come from the parole board would not have been mitigation evidence, but instead, evidence of Petitioner's lack of remorse, rehabilitation, and future dangerousness.  Ex parte Elias, Appl. No.

60,284-03 at 57; -04 at 53. The trial court found that counsel fully investigated Petitioner's case. Id. at 64; -04 at 60.

Similar to Petitioner's claim of incompetency, Petitioner has failed to provide the Court with any evidence suggesting his mental shortcomings prevented him from forming the mens rea to commit his crimes. In addition, Petitioner has failed to demonstrate that he was prejudiced as a result of counsel's alleged failure to present mitigating evidence. In order to prove prejudice, Petitioner must establish a reasonable probability that but for his counsel's deficient performance, he would have received a "significantly less harsh" sentence. Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993). The Fifth Circuit stated "[w]e have observed that this standard reflects our concern of allowing review of sentences imposed by state courts possessing a 'wide range of sentencing discretion' while avoiding an 'automatic rule of reversal.'" Ward v. Dretke, 420 F.3d 479,498 (5th Cir. 2005) (citing United States v. Reinhart, 357 F.3d 521, 531 (5th Cir. 2004) and United States v. Phillips, 210 F.3d 345, 351 (5th Cir. 2000)). When applying this standard, the Court "must consider such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances." United States v. Segler, 37 F.3d 1131, 1136 (5th Cir. 1994) (citing Spriggs, 993 F.2d at 88).

The Court's task under the AEDPA is that of determining whether the state habeas court's application of the law to the facts was reasonable. Importantly, in order to grant habeas relief from a state conviction following rejection of the petitioner's state habeas application, the Court must conclude that the state habeas court's application of federal law was not only incorrect, but "objectively unreasonable." Ward v. Dretke, 420 F.3d 479,499 (5th Cir. 2005).

15

In this case Petitioner was sentenced to 50 years imprisonment for two counts of arson. Petitioner's conviction was enhanced by three prior felony convictions, increasing Petitioner's range of punishment to not more than 99 years or life and not less than 25 years in prison. TEX. PENAL CODE ANN. § 12.42(d).   Petitioner's 50-year sentence falls in the lower to middle range of punishment.  The trial court considered Petitioner's prior convictions for attempted burglary of a building, burglary of a habitation, and burglary of a building to which Petitioner pleaded true.  6 SF The Court also considered Petitioner's misdemeanor conviction for criminal mischief, which had originally been indicted as an arson, and an assault family violence.  In light of the admissible punishment evidence Petitioner cannot demonstrate his sentence would have been less harsh had evidence of Petitioner's mental status been introduced.

## **RECOMMENDATION**

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## **OBJECTIONS**

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

district court.  See 28 U.S.C. § 636(b)(1)(C);  Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985);  Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 29th day of October, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE